■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TONY JORDAN, Appellant. [780 NYS2d 239]—

Peters, J. Appeal from a judgment of the Supreme Court (Lamont, J.), rendered January 3, 2003 in Albany County, upon a verdict convicting defendant of the crimes of criminal possession of a controlled substance in the third degree and false personation.

On the morning of October 16, 2001, plainclothes detectives Eugene Duda and Douglas Vogel of the Albany County Sheriff's Department were conducting a drug interdiction at the bus terminal in the City of Albany, Albany County, when they observed defendant alight from a northbound bus arriving from New York City. Defendant obtained a boarding pass from the driver and entered the terminal. Thereafter, the police turned their attention to other passengers until they noticed that defendant entered a line of passengers waiting to board a westbound bus. Shortly before approaching the bus driver, who was accepting tickets at the front of the line, defendant got out of line and reentered the terminal. After looking around the terminal, he rejoined the line of passengers boarding the westbound bus.

Defendant once again left the line before encountering the bus driver and proceeded to reenter the terminal, walk to the back and play a video game. The police followed defendant, waited until he had completed the game, then approached him, identifying themselves as police officers and requesting identification and a bus ticket. Defendant produced his ticket and a New York nondriver resident identification card; according to Duda, the card's validity appeared questionable because it contained markings not typical of such cards issued by the Department of Motor Vehicles. In response to a request for his name, date of birth and age, defendant stated that his name was Trent Jordan, the same name appearing on the identification card. However, he provided an age and date of birth that was inconsistent therewith. After advising defendant that he could be arrested for false personation if he was providing incorrect identification, the police next observed that defendant's bus ticket was issued to an "A. Jordan" for the City of Glens Falls, Warren County, one of the stops for the bus from which defendant had originally departed. In response to further questioning, defendant acknowledged that A. Jordan was his real name.

After defendant continued to provide information inconsistent with the information stated on his identification card, Duda asked defendant if he "had anything on him that he shouldn't have." At that point, he produced a small bag of marihuana. Defendant voluntarily accompanied the police back to the bus on which he had been traveling to confirm his statement that

he came without luggage. While they were approaching the bus, Duda observed a "slight limp" in defendant's right leg; when he complied with their request to remove his right shoe, approximately $230 in folded United States currency was revealed. In responding to a request to remove his other shoe, defendant made a "swiping motion," with which he appeared to take an item out of his left shoe and toss it under his bus seat. The item was later discovered to be a plastic bag containing 45 "tie-offs" of crack cocaine.

Based on these events, defendant was arrested and charged in a four-count indictment with the crimes of criminal possession of a controlled substance in the third degree, criminal possession of a controlled substance in the fourth degree, unlawful possession of marihuana and false personation. At defendant's ensuing jury trial, during which all of the aforementioned facts were established, he admitted to his possession of the marihuana, denied ownership of the cocaine and refuted the police account of his questioning. Subsequently, defendant was convicted of the crimes of criminal possession of a controlled substance in the third degree and false personation. He was sentenced as a second felony offender to a prison term of 6 to 12 years for the drug conviction and a jail term of 90 days for false personation. Following Supreme Court's denial of defendant's CPL 330.30 motion to set aside the verdict, defendant appealed.

At the outset, we note that Supreme Court properly limited the issue before it to whether defendant's encounter with and subsequent detention by the police was lawful under the specific circumstances presented.* In this regard, defendant's primary contention is that Supreme Court erred in refusing to suppress both his statements and the evidence recovered by contending that the initial questioning was not justified as a permissible police-citizen encounter. We disagree.

The detectives' observations of defendant—twice entering and twice abandoning a bus line in order to reenter the terminal—presented facts sufficient to justify a request for information, the first of four levels of police inquiry recognized by the Court of Appeals in *People v De Bour* (40 NY2d 210 [1976]; *see People v Hollman*, 79 NY2d 181 [1992]). Although defendant's conduct was not indicative of criminality, it did provide an objective, credible reason for the police to approach him to

---

* This precluded both sides from attempting to expand the issues to include a general examination of the constitutionality of drug interdiction activities conducted by the Albany County Sheriff's Department at the bus terminal. We agree with Supreme Court that defendant's trial was not a proper forum to mount a general challenge to the drug interdiction program.

ask general, nonthreatening questions concerning his identity and destination (*see People v Faines*, 297 AD2d 590, 593-594 [2002], *lv denied* 99 NY2d 558 [2002]; *People v Jackson*, 251 AD2d 820, 822 [1998], *lv denied* 92 NY2d 926 [1998]; *cf. People v McIntosh*, 96 NY2d 521 [2001]). Defendant's inconsistent and untruthful answers to those questions led to a founded suspicion that criminality was afoot, thereby permitting the police to invoke their common-law right to inquire through the use of more pointed, accusatory questions (*see People v Hollman, supra* at 191-192; *People v Ramirez-Portoreal*, 230 AD2d 943, 944 [1996], *lv denied* 88 NY2d 1071 [1996]; *People v Hanson*, 195 AD2d 408, 410 [1993]). As we perceive no impropriety in their initiation of the encounter with defendant and conclude that the parameters of *People v De Bour* (*supra*) were never exceeded, Supreme Court properly refused to suppress the fruits of their inquiry.

We further reject defendant's argument that he was denied his statutory and constitutional rights to a speedy trial. Supreme Court, after extensive analysis of relevant facts, concluded that the People had indeed demonstrated "in fact readiness" for trial in December 2001 concerning all counts of the indictment except the unlawful possession of marihuana charge. Supreme Court's charge of only 73 days of delay to the prosecution—an amount far less than the six-month time limit imposed by CPL 30.30—was correctly computed (*see* CPL 30.30 [4] [a]; *People v England*, 84 NY2d 1, 4 [1994]; *People v Cross*, 273 AD2d 702, 703 [2000]; *People v Meiner*, 248 AD2d 806, 807 [1998]; *People v Boomer*, 220 AD2d 833, 836 [1995]).

We also find no merit to defendant's assertion that the verdict was repugnant because it found him guilty of criminal possession of a controlled substance in the third degree but not criminal possession in the fourth degree. "In reviewing a claim of repugnancy, the court must focus on the elements of each count as charged to the jury, . . . and the review is limited to determining 'whether the jury, as instructed, must have reached an inherently self-contradictory verdict' " (*People v Bisner*, 260 AD2d 665, 668 [1999], *lv denied* 93 NY2d 1014 [1999], quoting *People v Tucker*, 55 NY2d 1, 8 [1981] [citation omitted]); reversal on repugnancy grounds is justified only when the reviewing court determines that defendant has been convicted of an offense containing an essential element which the jury has found the defendant did not, in fact, commit (*see People v Trappier*, 87 NY2d 55, 58 [1995]; *People v Bisner, supra* at 668-669). Our review of the two subject drug charges reveals no inconsistency or negation of guilt due to their respective elements—criminal

possession of a controlled substance in the third degree contains an intent to sell element but no specific limit on the quantity of the substance possessed, whereas criminal possession of a controlled substance in the fourth degree requires a possession of at least one eighth of an ounce of the cocaine but lacks the element of intent to sell (*compare* Penal Law § 220.16 [1], *with* Penal Law § 220.09 [1]). Indeed, the difference between the two charges was emphasized during defense counsel's summation, who implored the jury to find that the People had not proven the latter count because they had failed to establish that the cocaine met the weight requirement set forth in the statute. Accordingly, we do not find the verdict to be repugnant.

Nor do we find merit in defendant's contention that Supreme Court was required to grant a posttrial hearing. The unsigned, undated, unsworn, letter from the jury foreperson expressing confusion over the jury charge was produced long after the jury had rendered its unanimous verdict, which was confirmed through polling. As we find no exceptional circumstances warranting deviation from the general rule prohibiting the use of juror affidavits to impeach jury verdicts that are "solemnly made and publicly returned in court" (*People v Foti*, 99 AD2d 517, 517 [1984]), defendant's motion to set aside the verdict was properly denied (*see People v De Lucia*, 15 NY2d 294, 296 [1965], *cert denied* 382 US 821 [1965]).

As we have reviewed and rejected defendant's remaining contentions of error, including those regarding Supreme Court's evidentiary rulings, we affirm.

Cardona, P.J., Spain, Carpinello and Kane, JJ., concur. Ordered that the judgment is affirmed.