■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v KEVIN SAVAGE, Respondent. [873 NYS2d 770]—

Lahtinen, J. Appeal from an order of the County Court of Albany County (Herrick, J.), entered December 27, 2006, which

granted defendant's motion to suppress evidence and dismissed the indictment.

On May 18, 2006, Eugene Duda, an Albany County Sheriff's Investigator, was conducting a drug interdiction at the City of Albany bus terminal with another plain clothed sheriff's investigator and a city police detective wearing a police vest and jacket. Duda observed defendant, carrying a backpack and plastic bag, exit a bus from New York City and linger briefly. Another male passenger, Stephen Mazier, exited the bus, spoke with defendant, and the pair proceeded into the terminal. As they walked toward the detective who was wearing the vest marked "police," defendant stopped and Duda overheard him remark to Mazier "there's the police." Defendant and Mazier then walked out to the front of the terminal near the taxi area, and Duda observed defendant repeatedly turning around, watching the detective. Once outside, defendant walked up to a pole, put his bags down, walked three to four feet away and waited one to two minutes, continuing to look back at the detective; Mazier walked over to a garbage can and stood. When the detective went to speak with a person in the terminal, defendant retrieved his bags, he and Mazier "hurried[ly]" walked directly to a waiting three-row minivan taxi and sat in the third seat. Duda approached the van and spoke with defendant through the open sliding passenger-side door. The other investigator spoke with Mazier. Duda identified himself, explained that they were conducting drug interdiction and asked defendant for identification and a bus ticket. According to Duda,* defendant removed his wallet from his backpack, took out his license, returned the wallet to his backpack, and then voluntarily exited the van so that he did not have to talk over the passenger in the middle seat. Defendant gave Duda his Georgia driver's license and produced two bus tickets for that date from New York City bearing names other than defendant's and Mazier's names. Defendant confirmed his correct name and, when asked, defendant replied that Amsterdam was his destination and pointed to Mazier as his travel companion. When Duda asked if he had any luggage, defendant replied "no," which he repeated when asked if he was sure. Duda then summoned the detective to stand by defendant, and Duda removed the bags that defendant had been carrying from the third seat; defendant again responded that

---

* While defendant and Mazier testified that they were ordered out of the van, County Court credited Duda's testimony, finding it to be "candid and forthright." Given the court's ability to observe the witnesses' demeanor and testimony, we discern no grounds upon which to disturb that determination (see People v Quick, 122 AD2d 296, 297-298 [1986], lv denied 69 NY2d 715 [1986]).

they were not his bags. Defendant did not reply when Duda asked if he could open them and, upon opening the backpack, found male clothing and a kilo of cocaine.

Defendant was arrested and later indicted for criminal possession of a controlled substance in the first and third degrees. Defendant moved to suppress the seized drugs and, after a *Mapp* and *Dunaway* hearing at which Duda, Mazier and defendant testified, County Court granted defendant's motion to suppress and dismissed the indictment finding that police did not have a sufficient basis for their initial approach and inquiry of defendant. On the People's appeal, we reverse.

Under well-established principles, police officers acting in their law enforcement capacity may approach an individual and request basic information—such as identification and destination—in a nonthreatening manner, provided they have an objective credible reason to do so, not necessarily indicative of criminality (*see People v Hollman*, 79 NY2d 181, 184-185 [1992]; *People v De Bour*, 40 NY2d 210, 223 [1976]; *see also People v McIntosh*, 96 NY2d 521, 525 [2001]). Here, Duda's observations of defendant inside and outside of the terminal, prior to his approach—commenting on police presence, keeping watch on the detective who was wearing the vest marked "police," separating from his own bags and from Mazier outside the terminal, and hurrying into a taxi once the detective was distracted—while not necessarily suggestive of criminality, provided a credible, objective reason for Duda to approach defendant to ask general questions regarding identity, destination, his travel companion and to see his bus ticket (*see People v Jennings*, 39 AD3d 970, 972 [2007], *lv denied* 9 NY3d 845 [2007]; *People v Hodges*, 13 AD3d 979, 980 [2004]; *People v Jordan*, 9 AD3d 792, 794-795 [2004], *lv denied* 3 NY3d 708 [2004]; *cf. People v McIntosh*, 96 NY2d at 527). The encounter was brief and devoid of indicia of intimidation or harassment, and the type of questions asked fell within the "fairly broad authority" of law enforcement to approach individuals for the purpose of requesting information (*see People v Hollman*, 79 NY2d at 189-190; *People v De Bour*, 40 NY2d at 213, 219). Notably, Duda's approach of defendant was not, under these circumstances, merely based upon "whim and caprice" or on the fact that the bus from which defendant exited had originated from a known "source city" but, rather, was premised upon observations of certain activity that provided an articulable reason for the initial approach under the first tier of *De Bour* (*cf. People v McIntosh*, 96 NY2d at 525-527).

In this context, defendant's production of two bus tickets bearing false names and denial that he had any bags or luggage,

which was untrue, led to a founded suspicion that criminality was afoot, permitting Duda to ask more pointed questions regarding the ownership of the bags in the third seat of the van as part of a level-two common-law right of inquiry (*see People v Hollman*, 79 NY2d at 184-185, 191-193; *People v Jennings*, 39 AD3d at 972; *People v Hodges*, 13 AD3d at 980; *People v Jordan*, 9 AD3d at 795). By denying ownership of the bags during a properly initiated police inquiry, defendant voluntarily waived any privacy expectation that he had in the backpack and bag that he had carried into the van and, thus, he lacked standing to contest the admissibility of the cocaine seized from the abandoned backpack (*see People v Ramirez-Portoreal*, 88 NY2d 99, 110 [1996]; *People v Jennings*, 39 AD3d at 972). We are unpersuaded by the remaining contentions raised by defendant on appeal.

Thus, defendant's motion to suppress the evidence should have been denied, and the indictment should not have been dismissed.

Mercure, J.P., Malone Jr. and Kavanagh, JJ., concur. Ordered that the order is reversed, on the law, motion denied, and matter remitted to the County Court of Albany County for further proceedings not inconsistent with this Court's decision.