■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JERONE G. ROSS, Appellant. [964 NYS2d 740]—

Spain, J. Appeal from a judgment of the County Court of Broome County (Smith, J.), rendered January 11, 2011, convicting defendant upon his plea of guilty of the crime of criminal possession of a weapon in the second degree.

On November 25, 2009, defendant was a passenger in a taxicab van that was stopped by police officers for traffic infractions in the City of Binghamton, Broome County. After the occupants denied ownership of the bags in the rear third-row seat area of the taxicab, a search of the bags revealed, among other things, a handgun and bullets. Defendant was arrested and later indicted for criminal possession of a weapon in the second and third degrees. Defendant moved, among other relief, for suppression of the handgun as the product of an illegal traffic stop. After a hearing, County Court issued a written decision denying suppression, and defendant thereafter entered a negotiated guilty plea to the top count of the indictment and was sentenced to five years in prison to be followed by five years of

postrelease supervision. Defendant now appeals, challenging the suppression ruling, which challenge survives his guilty plea (see CPL 710.70 [2]).

We affirm. The suppression testimony established that defendant's house in Binghamton was under surveillance for reported drug activity by city police officers, who observed defendant engage in suspected drug selling with another individual. Defendant was seen loading bags into the back of a taxicab, which drove off without passengers when officers arrived nearby to deal with an unrelated call. When the taxicab returned approximately eight minutes later, defendant and another person got in and it drove off. This information was communicated to back-up officers who followed the taxicab, observed it roll through a stop sign without coming to a complete stop and, a few blocks later, drive through a red traffic light. Two officers in an unmarked car stopped the taxicab based upon these traffic infractions.

Given the unrefuted evidence that police officers observed two traffic infractions by the taxicab driver, they possessed probable cause to initiate a traffic stop, regardless of whether the infractions were the primary motive for the stop (see People v Robinson, 97 NY2d 341, 349 [2001]; People v McLean, 99 AD3d 1111, 1111-1112 [2012], lv denied 20 NY3d 1013 [2013]; People v Viele, 90 AD3d 1238, 1239 [2011], lv denied 19 NY3d 868 [2012]; see also Vehicle and Traffic Law §§ 1111 [d] [1]; 1172 [a]). To the extent that defendant challenges County Court's factual finding that traffic infractions occurred and were observed by the officers, we defer to and decline to disturb the court's finding, given its first-hand observation of the officers' testimony; this finding is supported by uncontradicted testimony and a DVD surveillance recording (see People v Merritt, 96 AD3d 1169, 1170 [2012], lv denied 19 NY3d 1027 [2012]). That the officers did not ultimately issue a traffic ticket did not render the otherwise lawful traffic stop illegal. Thus, the court correctly determined that the stop of the taxicab was authorized.

Upon approaching the taxicab, one officer spoke with the driver, who indicated that none of the bags belonged to him. The other officer spoke with defendant, the front passenger, who, when asked to roll down his window, opened the door. The officer asked defendant to step out of the taxicab, to provide his name, address and birth date, and to indicate where he was coming from and who was in the car. Defendant indicated that he knew the middle seat passenger only by an initial and, when asked about the bags in the rear seat, defendant twice stated that they were not his. Defendant was described as very ner-

vous, stuttering and sweating, and repeatedly looking toward the rear of the taxicab. The passenger identified one bag next to him as his property and otherwise stated that the bags in the back were not his, and he, like the driver, consented to a search of the bags, which disclosed receipts and a handgun in a backpack.

Given these facts, we are not persuaded by defendant's challenge to the search of the bags and the admissibility of the weapon seized. Having lawfully stopped the taxicab, the police officers were authorized, as a precautionary measure, to order any of its occupants to get out (*see People v Robinson*, 74 NY2d 773, 774 [1989], *cert denied* 493 US 966 [1989]; *People v Wolfe*, 103 AD3d 1031, 1034 [2013]; *People v Muniz*, 12 AD3d 937, 938 [2004]). Additionally, under these circumstances, the officers were justified in asking defendant basic information, such as his name, date of birth and destination, which—according to uncontroverted testimony—was done in a nonthreatening manner and as part of a reasonable request for information, based upon "objective credible reason[s]" that were "not necessarily indicative of criminality" (*People v De Bour*, 40 NY2d 210, 223 [1976]; *see People v Garcia*, 20 NY3d 317, 322 [2012]; *People v Hollman*, 79 NY2d 181, 184 [1992]; *People v Savage*, 59 AD3d 817, 819 [2009], *lv denied* 12 NY3d 920 [2009]; *People v Tejada*, 270 AD2d 655, 656 [2000], *lv denied* 95 NY2d 805 [2000]). Similarly, the officers' brief inquiries of all occupants, including defendant, about the bags in the rear of the taxicab were "neither accusatory nor intimidating" and "did not take the [initial] encounter beyond a request for information" (*People v Wellington*, 265 AD2d 213, 214 [1999], *lv denied* 94 NY2d 886 [2000]; *see People v Hollman*, 79 NY3d at 184-185; *People v Savage*, 59 AD3d at 819; *People v Ramirez-Portoreal*, 230 AD2d 943, 944 [1996], *lv denied* 88 NY2d 1071 [1996]).

Once defendant represented that none of the bags in the rear of the taxicab was his, rejecting any ownership of them, defendant "voluntarily waived any privacy expectation that he had in the backpack" and "lacked standing to contest the admissibility of the [weapon] seized from the abandoned backpack" (*People v Savage*, 59 AD3d at 820; *see People v Ramirez-Portoreal*, 88 NY2d 99, 110 [1996]; *People v Hodges*, 13 AD3d 979, 980 [2004]), as the abandonment was not "coerced or precipitated by unlawful police activity" (*People v Ramirez-Portoreal*, 88 NY2d at 110; *see People v Jennings*, 39 AD3d 970, 972 [2007], *lv denied* 9 NY3d 845 [2007]). Further, County Court, in correctly denying defendant's motion to suppress the physical evidence, did not improperly rely on evidence outside the record before it, as its

reference to the contents of the backpack (which formed the basis for defendant's subsequent arrest) was not relevant or necessary to its suppression ruling.

Peters, P.J., Stein and Garry, JJ., concur. Ordered that the judgment is affirmed.